UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of FRANCK BERLAMONT for
an Order Pursuant to 28 U.S.C. § 1782 to Conduct
Discovery for Use in Foreign Proceedings.

14 MISC. 00190

## OPTIMAL INVESTMENT SERVICES, S.A. AND HUNTON & WILLIAMS LLP'S MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO VACATE *EX PARTE* ORDER AND QUASH *EX PARTE* SUBPOENA, OR FOR A PROTECTIVE ORDER

**HUNTON & WILLIAMS LLP**
Shawn Patrick Regan, Esq.
200 Park Avenue, 52nd Floor
New York, New York  10166
Telephone:  (212) 309-1000
Facsimile: (212) 309-1100
Email:  sregan@hunton.com

- and -

Samuel A. Danon, Esq. (*to be admitted pro hac vice*)
Gustavo J. Membiela, Esq. (*to be admitted pro hac vice*)
1111 Brickell Avenue, Suite 2500
Miami, Florida  33131
Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460
Email:  sdanon@hunton.com
Email:  gmembiela@hunton.com

*Counsel for Optimal Investment Services, S.A. and Hunton & Williams LLP*

# TABLE OF CONTENTS

Page

BACKGROUND ........................................................................................................1

ARGUMENT ...........................................................................................................2

I.    Vacating the § 1782 Order Is Proper. ................................................2

II.   The § 1782 Order Violates Established Precedent, and the Resulting
      Subpoena Should Be Quashed. ..........................................................3
      A.    Berlamont Mischaracterized the Court's Order in *Rembaum*,
            Which Does Not Allow for Disclosure of the Documents to
            Berlamont. ..............................................................................3
      B.    The Hague Convention and Principles of Comity Prohibit
            Disclosure of the Documents. ...................................................5
      C.    The Requested Documents Are Confidential and Protected from
            Disclosure. ..............................................................................7
            1.    The *Rembaum* Confidentiality Order Prohibits Disclosure. ...........7
            2.    The English Civil Procedure Rules Prohibit Disclosure. ................9
            3.    Swiss Attorney-Client Privilege Prohibits Disclosure. ..................9
            4.    Hunton, as OIS's Counsel, Has an Obligation of
                  Confidentiality and a Duty Not To Disclose the Requested
                  Documents. ..........................................................................11
      D.    Berlamont Has Not Shown that the Requested Documents Are for
            "Use in a Foreign Proceeding." .................................................12
      E.    Application of the *Intel* Factors Lead the Court To Quash the
            Subpoena. ...............................................................................13

III.  In the Alternative, the Court Should Grant OIS and Hunton a Protective
      Order To Ensure the Continued Confidentiality of the Examination
      Transcript and Exhibits. .....................................................................14

CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Astra Aktiebolag v. Andrx Pharms., Inc.*,
  208 F.R.D. 92 (S.D.N.Y. 2002) ................................................................9, 10

*Burger v. Gonzales*,
  498 F.3d 131 (2d Cir. 2001).........................................................................3

*Diversified Grp., Inc. v. Daugerdas*,
  139 F. Supp. 2d 445 (S.D.N.Y. 2001).........................................................11

*Golden Trade v. Lee Apparel Co.*,
  143 F.R.D. 514 (S.D.N.Y. 1992) ................................................................10

*In re Letter of Request from Crown Prosecution Serv.*,
  870 F.2d 686 (D.C. Cir. 1989) ...................................................................12

*In re Merck & Co.*,
  197 F.R.D. 267 (M.D.N.C. 2000) .................................................................4

*In re Microsoft Corp.*,
  428 F. Supp. 2d 188 (S.D.N.Y. 2006)......................................................3, 13

*In re Optimal U.S. Litig.*,
  813 F. Supp. 2d 351 (S.D.N.Y. 2011)...........................................................1

*In re Optimal U.S. Litig.*,
  886 F. Supp. 2d 298 (S.D.N.Y. 2012).......................................................1, 4

*In re Procter & Gamble Co.*,
  334 F. Supp. 2d 1112 (E.D. Wis. 2004)......................................................15

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004).................................................................3, 12, 13, 14

*Maine Audubon Soc'y v. Purslow*,
  907 F.2d 265 (1st Cir. 1990).......................................................................4

*Mathews v. Eldridge*,
  424 U.S. 319 (1976)...................................................................................3

*Republic of Ecuador v. Connor*,
  708 F.3d 651 (5th Cir. 2013) ......................................................................6

*Smith v. Bayer Corp.*,
    131 S. Ct. 2368 (2011) ........................................................................................4

*Via Vadis Controlling Gmbh v. Skype, Inc.*,
    No. 12-mc-193, 2013 U.S. Dist. LEXIS 23434 (D. Del. Feb. 21, 2013) ..................8

**STATUTES**

28 U.S.C. § 1782 ................................................................................. *passim*

Fed. R. Civ. P. 26(c)(1) ...................................................................................15

Fed. R. Civ. P. 44.1 ...........................................................................................9

Fed. R. Evid. 501 .............................................................................................10

N.Y. R. Prof'l Cond. 1.6 ...................................................................................11

**OTHER AUTHORITIES**

English Civil Procedure Rules 1998, Rule 32.12 .........................................7, 9

Convention on the Taking of Evidence Abroad in Civil or Commercial Matters at Art. 1,
    23 U.S.T. 2555, 847 U.N.S.T. 231 .............................................................5, 6

Swiss Federal Code of Civil Procedure, Art. 160, lit. c .................................11

Swiss Federal Code of Criminal Procedure, Art. 264, § 1, lit. d. .................11

Swiss Penal Code, Art. 321, § 1, ¶ 1 ..............................................................10

Swiss Federal Lawyer's Act, Art. 13 .............................................................10

U.S. Const. Art. VI, cl. 2 ..................................................................................6

Optimal Investment Services, S.A. ("OIS") and its counsel, Hunton & Williams LLP ("Hunton"), submit this Memorandum of Law in support of their joint motion to vacate this Court's June 20, 2014 *ex parte* Order (the "Order") granting Petitioner Franck Berlamont ("Berlamont") leave to subpoena Hunton for certain documents, and to quash the resulting *ex parte* subpoena issued by Berlamont pursuant to the Order (the "Subpoena").[1] The subpoenaed documents are: (1) the confidential examination transcript of former OIS Senior Risk Officer Rajiv Jaitly ("Jaitly") and (2) all exhibits introduced during Jaitly's examination. Alternatively, OIS and Hunton move for a protective order to ensure the continued confidentiality of the examination transcript and exhibits.

## BACKGROUND

On December 11, 2008, the world learned that Bernard L. Madoff's investment firm, Bernard L. Madoff Investment Securities, LLC ("BLMIS"), was a Ponzi scheme. At the time the Ponzi scheme was revealed, OIS, a company incorporated in Switzerland, was the investment manager for certain off-shore funds affected by the BLMIS Ponzi scheme. *See In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 356 (S.D.N.Y. 2011). Hunton represented OIS and several other defendants in *In re Optimal U.S. Litigation*, No. 10-cv-405-SAS (S.D.N.Y.) (also referred to as *"Rembaum"*), wherein a group of plaintiffs sought to assert a putative class action against OIS and other defendants in connection with their investments in one of the funds affected by the BLMIS Ponzi scheme. *In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 301-02 (S.D.N.Y. 2012). On August 10, 2012, *Rembaum* was dismissed on grounds of *forum non conveniens. Id.* at 311.

---

[1] Concurrently with this motion, OIS has also moved to intervene in this case because Berlamont's subpoena demands OIS's counsel to produce documents obtained by Hunton in the course of Hunton's representation of OIS.

Berlamont, is the President and CEO of Geneva Partners, S.A. and allegedly invested funds through a fund that was affected by the BLMIS Ponzi scheme. (Berlamont's Decl., Ex. H, D.E.-3, at ¶¶ 1-2.)  In June 2009, Berlamont presented a criminal complaint to the public prosecutor in Geneva, Switzerland (*id.* at ¶ 3), who then opened a criminal probe on Manuel Echeverría ("Echeverría"), the former CEO of OIS and a Swiss resident (*see* Berlamont's Mem. of Law, D.E.-2, at 1).

In the Subpoena, Berlamont, who was not a party to the *Rembaum* proceedings, seeks the confidential transcript of a Letter Rogatory examination taken of Jaitly in that case, OIS's former Senior Risk Officer, as well as the accompanying exhibits. (Berlamont's Mem. of Law, D.E. 2, at 1.)  Jaitly's examination transcript is subject to a confidentiality order entered in the *Rembaum* proceedings, which prohibits its disclosure, as it contains personal information and confidential research, development, and commercial information relating to OIS.  Berlamont seeks the transcript not for his own use, but based on his unconfirmed "belie[f] that the transcript and exhibits from the deposition of Mr. Jaitly in *Rembaum* would be used and considered by the prosecutor in Geneva, and would aid the prosecutor in conducting Mr. Jaitly's deposition in July." (Berlamont's Decl., Ex. H, D.E.-3, at ¶ 9.)

## ARGUMENT

### I.      Vacating the § 1782 Order Is Proper.

The memorandum of law filed by Berlamont in support of his *ex parte* application acknowledged Movants' right and opportunity to be heard and argued that the Court should grant the application *ex parte* because "Hunton & Williams LLP would not be prejudiced by granting Petitioner's application *ex parte* as it will have an opportunity to challenge the discovery Petitioner is seeking once it is served with a subpoena." (Berlamont's Mem. of Law, D.E.-2, at 10.)  Movants seek that opportunity, and no presumption should be granted in Berlamont's favor

as a result of the prior *ex parte* entry of the § 1782 Order. *See, e.g.*, *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 193-96 (S.D.N.Y. 2006) (vacating the prior *ex parte* order granting § 1782 aid and reconsidering the case on its merits once the subpoena's recipient moved to quash the subpoena).[2] For the reasons stated below, the Court should then quash the Subpoena.

## II.      The § 1782 Order Violates Established Precedent, and the Resulting Subpoena Should Be Quashed.

The § 1782 Subpoena was improperly allowed and should be quashed because (1) Berlamont's counsel mischaracterized the *Rembaum* proceedings in order to obtain his requested relief; (2) the Hague Convention and principles of comity prohibit disclosure of the requested documents; (3) the confidential nature of the documents prohibits disclosure; (4) Berlamont has not shown that the requested documents are for "use in a foreign proceeding" and therefore the statutory elements for granting § 1782 aid are not met; and (5) the *Intel* factors counsel against granting § 1782 aid. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

### A.      Berlamont Mischaracterized the Court's Order in *Rembaum*, Which Does Not Allow for Disclosure of the Documents to Berlamont.

In his *ex parte* application, Berlamont and Berlamont's counsel mischaracterize the *Rembaum* proceedings and the order dismissing that case. Nothing in § 1782 required Berlamont's application to be made *ex parte*, but by choosing to proceed in this fashion, Berlamont's counsel was subject to a heightened duty of candor, which they failed to uphold.

_____

[2] In the event that the Court does not reconsider whether § 1782 aid is appropriate, OIS and Hunton would be deprived of their due process right to be heard "at a meaningful time and in a meaningful manner." *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Burger v. Gonzales*, 498 F.3d 131, 135 (2d Cir. 2001) (holding that the ability of the appellant to move to reopen proceedings in an immigration case did not "protect[] her right to be heard 'at a meaningful time and in a meaningful manner.').

*See In re Merck & Co.*, 197 F.R.D. 267, 270 (M.D.N.C. 2000) ("Nothing in Section 1782 states that the application is to be made *ex parte*, much less that the Court must entertain the application *ex parte*."); *see also Maine Audubon Soc'y v. Purslow*, 907 F.2d 265, 269 (1st Cir. 1990) ("Where counsel appears *ex parte*, however, the customary checks and balances do not pertain—and the court is entitled to expect an even greater degree of thoroughness and candor from unopposed counsel than in the typical adversarial setting."). Berlamont was not a plaintiff in *Rembaum* and the order in *Rembaum* does not apply to him.

As is typical in *forum non conveniens* cases, the *Rembaum* dismissal was conditioned upon defendants not objecting to the *Rembaum* plaintiffs' use of the voluminous paper discovery that had been produced in *Rembaum* if the plaintiffs subsequently chose to file a new civil proceeding in Switzerland. *See In re Optimal U.S. Litig.*, 886 F. Supp. 2d at 309. They have not. Berlamont took liberties with the *Rembaum* order and incorrectly claims that the *Rembaum* order determined that he was entitled to the documents for the *Echevarría* proceeding in Switzerland:

> "[T]he extensive discovery that has occurred does not counsel against dismissal," the [*Rembaum*] Court reasoned, "because defendants have consented to permit such discovery to be used in a Swiss proceeding and *dismissal is conditioned on plaintiffs' ability to use discovery already obtained in this case when the case is re-filed in Switzerland*." Petitioner now seeks to obtain the deposition transcript of Mr. Jaitly and related exhibits for use in the Swiss Proceeding.

(Berlamont's Mem. of Law, D.E.-2, at 4 (emphasis in original) (citation omitted).) The clear intent of this position was to imply that the Court in *Rembaum* had already determined that Berlamont was entitled to the requested documents, when it had not,[3] and to claim that the § 1782 application was a mere mechanism to carry out that end. Berlamont and his counsel

---

[3] Because the proposed class was not certified, any attempt by Berlamont to claim that he was a party to the *Rembaum* action would be unavailing. *See Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2380 (2011) ("Neither a proposed class action nor a rejected class action may bind nonparties.").

misguided the Court in submitting his application and, as a result, Berlamont's requested relief should be denied.

**B.      The Hague Convention and Principles of Comity Prohibit Disclosure of the Documents.**

Even if the Court did not grant the § 1782 Order as a result of Berlamont's misleading comment about *Rembaum*, Berlamont's requested § 1782 Order and the Subpoena violate the Hague Convention and principles of comity and therefore should be denied.  The examination transcript sought in the Subpoena was originally authorized by the English High Court of Justice in London based on the representation by the *Rembaum* Court that the examination would be for use only in *Rembaum*.  *See* Ex. A, Unopposed Letter of Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil and Commercial Matters for the Purpose of Securing Evidence for Trial from Rajiv Jaitly (the "Letter Rogatory"), at 9 (stating "that all confidential information shall be used only for purpose of this action").[4]  After receiving the Letter Rogatory, the English High Court of Justice issued an Amended Order for Examination, which provides that "the purpose of questioning in the Examination shall be for the purpose only of eliciting and recording testimony appropriate to be given at the trial in the New York District Court for the Southern District of New York."  Ex. B, Amended Order for Examination, at ¶ 6(h).  The scope and purpose of the examination was thus clear at the time it was authorized and taken.

Article 1 of the Hague Convention provides that: "A letter shall not be used to obtain evidence which is not intended for use in judicial proceedings, commenced or contemplated." *See* Convention on the Taking of Evidence Abroad in Civil or Commercial Matters at Art. 1,

---

[4] The exhibits to this Memorandum of Law are attached to the Declaration of Shawn Patrick Regan, Esq., in support of the present joint motion.

*opened for signature* Mar. 18, 1970, 23 U.S.T. 2555, 847 U.N.S.T. 231, *available at*

http://www.hcch.net/upload/conventions/txt20en.pdf [hereinafter, "The Hague Convention"].

Therefore, the English High Court would have refused to grant its order had the Letter Rogatory

requested the examination to be used more broadly—*i.e.,* to be used not merely for *Rembaum*,

but rather to be used to help with deposition preparation in a criminal proceeding in a third

country.  It is especially likely that the English High Court of Justice would have refused the

request had it known that the Court would then require OIS's counsel to give the examination

transcript to a third party for purposes of deposition preparation in a third country because the

United Kingdom has made an Article 23 Reservation under the Hague Convention, which

"declare[s] that the United Kingdom will not execute Letters of Request issued for the purpose of

obtaining pre-trial discovery of documents." *Id.* at Art. 23. The Amended Order for Examination

shows that the English High Court of Justice believed that it was authorizing Jaitly's examination

for only the limited purpose allowed.  *See* Ex. B, Amended Order for Examination, at ¶ 6(h).

Therefore, allowing further disclosure via the § 1782 Order and the Subpoena would violate the

Hague Convention, which, as a ratified treaty,[5] is "the supreme law of the land." *See* U.S. Const.

Art. VI, cl. 2 ("[A]ll treaties made, or which shall be made, under the authority of the United

States, shall be the supreme law of the land; . . . .").

    Further, even if there is not an express violation of the Hague Convention, comity

principles require this Court to deny the § 1782 application.  The whole purpose of § 1782 is

"[t]o promote international dispute resolution and comity." *Republic of Ecuador v. Connor*, 708

F.3d 651, 654 (5th Cir. 2013).  Allowing the disclosure of the Jaitly examination transcript for a

---

    [5] *See* Convention on the Taking of Evidence Abroad in Civil or Commercial Matters,
*opened for signature* Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, 847 U.N.T.S. 231,
*codified at* 28 U.S.C. § 1781 (ratifying the Hague Convention).

purpose other than that for which it was originally authorized violates the sovereignty of the English courts, which this Court should respect, and, therefore, Berlamont's § 1782 application should be denied.

**C.     The Requested Documents Are Confidential and Protected from Disclosure.**

Berlamont's request must also be denied based on the confidentiality of the requested documents: (1) the confidentiality order entered in the *Rembaum* action prohibits disclosure; (2) Rule 32.12 of the English Civil Procedure Rules 1998 prohibits disclosure; (3) Swiss attorney-client privilege doctrine prohibits disclosure; and (4) Hunton, as OIS's counsel, has a duty to preserve the confidences of its clients, including the documents requested here, under the rules regulating professional conduct.

**1.     The *Rembaum* Confidentiality Order Prohibits Disclosure.**

On September 12, 2011, the *Rembaum* Court entered a protective order, which provides that "Plaintiffs and Defendants shall use all non-public Discovery Material solely in connection with the [*Rembaum*] matter." Ex. C, Confidentiality Stipulation and Order at ¶ 2, *In re Optimal U.S. Litig.*, No. 10-cv-4095 (S.D.N.Y. Sept. 12, 2011) (the "Confidentiality Order"). The Jaitly examination was designated as Confidential pursuant to the Confidentiality Order because it contains "confidential research, development, or commercial information" and "personal non-public information." *See id.* at ¶ 3.

The Confidentiality Order prohibits disclosure of the requested documents to "persons other than Qualified Persons." *Id.* at ¶ 4. "Qualified Persons" are defined as: the *Rembaum* plaintiffs, defendants, and their outside counsel of record; the directors, officers, employees, and partners of the parties or any subsidiary or affiliate thereof; the Court and its personnel; outside consultants and experts retained or used for the purpose of the *Rembaum* action; witnesses and potential witnesses that in good faith may become witnesses at the trial or a deposition in

7

*Rembaum*; outside photocopying services, graphic production services, litigation support services, or investigators assisting in the *Rembaum* action; or any other person agreed to in writing by counsel for the producing party as necessarily incident to the *Rembaum* action. *Id.* at ¶ 5. Neither Berlamont nor the Swiss prosecutor fall under the definition of "Qualified Persons."

The Confidentiality Order also specifically contemplates whether counsel, such as Hunton, may produce confidential information in other litigation, and the answer is a resounding no: "Counsel shall not use or file any non-public Discovery Material in any litigation other than this Action." *Id.* at ¶ 2. Furthermore, the Confidentiality Order provides that it "shall remain in effect after the conclusion of this action." *Id.* at ¶ 15. Berlamont provides no basis for undoing the Court-entered Confidentiality Order.

Where disclosing the requested information would mean violating a confidentiality order from a prior U.S. case, courts should deny § 1782 aid. *See* Ex. D, *Via Vadis Controlling Gmbh v. Skype, Inc.*, No. 12-mc-193, 2013 U.S. Dist. LEXIS 23434, at *7-8 (D. Del. Feb. 21, 2013). In *Via Vadis*, the petitioner sought to obtain from the respondents the respondents' source code and other documents. *Id.* at *1. The petitioner and the respondents were engaged in parallel litigation in the United States, Germany, and Luxembourg. *Id.* at *2. During the U.S. litigation, the court required the respondents to give these documents to the petitioner. *Id.* However, the respondents did so under the confidentiality order in place in the U.S. litigation. *Id.* at *7. The court denied the petitioner's § 1782 request for the court to make the source code and documents available in the foreign litigation because doing so would "intrude on the protective order from that prior litigation," which prohibited their further dissemination. *Id.* Here, as in *Via Vadis*, the § 1782 request should be denied.

### 2.   The English Civil Procedure Rules Prohibit Disclosure.

Furthermore, because English law prohibits disclosure of the requested documents, the

Court should quash the Subpoena.  The Letter Rogatory specifically "requests that the

confidentiality of any evidence produced be maintained pursuant to the laws of England." Ex. A,

Letter Rogatory, at 10.  Thus, English law applies.  Rule 32.12 of the English Civil Procedure

Rules 1998 provides that "a witness statement may be used only for the purpose of the

proceedings in which it is served." CPR 32.12(1), *available at*

http://www.legislation.gov.uk/uksi/1998/3132/body/made.[6]  The only three exceptions to this

rule are if: (1) the witness gives consent in writing to some other use of it"; (2) "the court gives

permission for some other use"; or (3) "the witness statement has been put in evidence at a

hearing held in public." *Id.* at CPR 32.12(2).  None of these exceptions applies here, and the

English High Court of Justice has not given its permission for Berlamont to receive the

documents.

### 3.   Swiss Attorney-Client Privilege Prohibits Disclosure.

Not only is disclosure prohibited by the *Rembaum* Confidentiality Order and the English

Civil Procedure Rules, disclosure is also prohibited by Swiss law.  Swiss attorney-client

privilege is applicable to the requested documents.  As this Court has described, where "alleged

privileged communications took place in a foreign country or involved foreign attorneys or

proceedings," courts look to the country with the "'predominant' or 'the most direct and

compelling interest' in whether those communications should remain confidential, unless that

foreign law is contrary to the public policy of this forum." *Astra Aktiebolag v. Andrx Pharms.,*

---

[6] "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.

*Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002) (citations omitted).  This result is compelled by Rule 501 of the Federal Rules of Evidence, which provides that questions of privilege are generally "governed by the principles of common law."  Fed. R. Evid. 501.

In this Circuit, "[t]he jurisdiction with the 'predominant interest' is either 'the place where the allegedly privileged relationship was entered into' or 'the place in which that relationship was centered at the time the communication was sent'," which is a disjunctive test.  *Astra Aktiebolag*, 208 F.R.D. at 98 (citation omitted).  Importantly, "sensitivity to the interests of other jurisdictions is perhaps most compelling in the international arena."  *Golden Trade v. Lee Apparel Co.*, 143 F.R.D. 514, 521 (S.D.N.Y. 1992).  Because OIS is a Swiss entity and the documents are being requested for a Swiss proceeding, Swiss attorney-client privilege is applicable unless the Court finds that it is contrary to public policy.  *See Astra Aktiebolag*, 208 F.R.D. at 98.  Considering that the American legal system encourages attorneys to protect the confidences of their clients, *see infra* Part II.C.D, Swiss attorney-client privilege cannot be deemed to be contrary to public policy.

Switzerland's attorney-client privilege doctrine prohibits outside attorneys from disclosing any documents in their client's files.  Article 13 of the Swiss Federal Lawyer's Act provides that lawyers must observe professional secrecy for all information that has been confided to them by their clients as a result of their professional activity.  Swiss Federal Lawyer's Act, Art. 13; *see also* Swiss Penal Code, Art. 321, § 1, ¶ 1 (providing that lawyers "who divulge a secret which was entrusted to them due to their profession, or which they have learnt within the execution of their profession, are punished, upon request, by imprisonment of up to three years or by a monetary punishment").  The Swiss Federal Code of Civil Procedure provides that a lawyer cannot be compelled by a civil court to produce a privileged document.

10

Swiss Federal Code of Civil Procedure, Art. 160, lit. c.  The same rule applies in criminal

proceedings.  Swiss Federal Code of Criminal Procedure, Art. 264, § 1, lit. d.  Because

Berlamont may not compel OIS's counsel to disclose its client's confidential documents, this

Court should deny Berlamont's § 1782 application.

**4.     Hunton, as OIS's Counsel, Has an Obligation of Confidentiality and a Duty Not To Disclose the Requested Documents.**

Similarly, under U.S. law, Berlamont's Subpoena would compel OIS's counsel to

disclose *its client's* confidential documents, and therefore the Court should quash the Subpoena

pursuant to counsel's duty to preserve a client's confidences.  Hunton has an obligation, as well

as a duty, not to disclose the requested documents.  Rule 1.6 of New York's Rules of

Professional Conduct prohibits Hunton from disclosing the documents against OIS's wishes.

Rule 1.6 provides that "[a] lawyer shall not knowingly reveal confidential information," unless

certain exceptions apply.  N.Y. R. Prof'l Cond. 1.6.  Rule 1.6 defines "confidential information"

as, *inter alia*, any "information gained during or relating to the representation of a client,

whatever its source, that is . . . information that the client has requested be kept confidential."  *Id.*

As this Court has recognized, "[t]he ethical duty of confidentiality imposed upon attorneys goes

beyond the limited evidentiary, attorney-client privilege."  *Diversified Grp., Inc. v. Daugerdas*,

139 F. Supp. 2d 445, 455 (S.D.N.Y. 2001).  "The rule of confidentiality, as the courts have

described it, applies not only during judicial proceedings, but at all times, and to client 'secrets'

as well as 'confidences.'"  *Id.*

Because OIS does not consent to Hunton disclosing OIS's confidential documents,

Hunton is obligated not to disclose them pursuant to the New York Rules of Professional

Conduct and analogous rules in other jurisdictions.  Moreover, as previously described, the

*Rembaum* Confidentiality Order specifically provides that "Counsel shall not use or file any non-

11

public Discovery Material in any litigation other than this Action." Ex. C, Confidentiality Order at ¶ 2. Accordingly, it is unduly burdensome and intrusive to require the requested documents to be produced. Producing the subpoenaed documents would require Hunton to break the confidences of its client and to violate the *Rembaum* Confidentiality Order.

**D.      Berlamont Has Not Shown that the Requested Documents Are for "Use in a Foreign Proceeding."**

In addition to the above reasons for denying the requested Subpoena, Berlamont's § 1782 application fails because Berlamont has not shown that the statutory prerequisites for granting such aid are met. Section 1782 requires that Berlamont prove that: (1) the subpoenaed person resides in the district in which the request is made; (2) the subpoenaed documents are "for use in a proceeding in a foreign or international tribunal"; and (3) Berlamont is an "interested person." *Intel*, 542 U.S. at 246 (internal quotation marks omitted). Berlamont fails to carry his burden with respect to the second element.

A necessary prerequisite for granting § 1782 aid is "that the evidence is eventually to be used in such a proceeding." *In re Letter of Request from Crown Prosecution Serv.*, 870 F.2d 686, 690 (D.C. Cir. 1989) (internal quotation marks omitted). Here, Berlamont has requested the documents at issue merely based on his speculative "belie[f] that the transcript and exhibits from the deposition of Mr. Jaitly in *Rembaum* would be used and considered by the prosecutor in Geneva, and would aid the prosecutor in conducting Mr. Jaitly's deposition in July." (Berlamont's Decl., Ex. H, D.E.-3, at ¶ 9.) The most he can say is that, "[g]iven their relevance to the proceeding, Petitioner has good reason to believe that these documents could, and would, be considered." (Berlamont's Mem. of Law, D.E.-2, at 9.)

Clearly, Berlamont is not attempting to admit these documents into evidence, nor is he attempting to use these documents to gain admissible evidence. Rather, he is merely using these

12

documents to give them supposedly to the Swiss prosecutor, who has not even indicated or suggested that he wants them, in order for the Swiss prosecutor to better prepare for his deposition of Jaitly. This sort of deposition preparation is not the purpose of § 1782, which serves to authorize the discovery of documents for "use" in a foreign proceeding. 28 U.S.C. § 1782(a). Accordingly, Berlamont's stated rationale fails to show that the statutory elements are met, and this Court is required to deny his § 1782 application

> **E.      Application of the *Intel* Factors Lead the Court To Quash the Subpoena.**

Finally, the Court must consider four additional factors laid out by the Supreme Court in determining whether to grant a § 1782 application: (1) whether the person from whom discovery is sought is a participant in a foreign proceeding, as nonparticipants' "evidence, available in the United States, may be unobtainable absent § 1782(a) aid"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65; *see also In re Microsoft*, 428 F. Supp. 2d at 193-96 (applying the four *Intel* factors). Contrary to Berlamont's assertions, these factors counsel against granting Berlamont's § 1782 application.

In addition to the direct legal basis evidenced by the arguments in Sections A-D above, these arguments also counsel in favor of the Court exercising its discretion under § 1782 and deny the application. Berlamont does not seek the confidential documents for his own use, but instead seeks the documents so as to turn them over allegedly to a third party, the Swiss prosecutor. Berlamont has requested the documents at issue here merely based on his speculative "belie[f] that the transcript and exhibits from the deposition of Mr. Jaitly in

13

*Rembaum* would be used and considered by the prosecutor in Geneva, and would aid the prosecutor in conducting Mr. Jaitly's deposition in July." (Berlamont's Decl., Ex. H, D.E.-3, at ¶ 9.) If the Swiss prosecutor wants the documents, he should request them; otherwise, it appears as though the character of the proceedings underway counsel against granting Berlamont's request. *See Intel*, 542 U.S. at 264-65 (second factor).

As described in Part II.C.3 *supra*, Swiss law on attorney-client privilege prohibits Hunton from disclosing its client's documents against its client's wishes, and a Swiss court, including the court in the *Echeverría* proceeding, would be unable to compel Hunton to disclose the documents. *See supra* Part II.C.3. Thus, Berlamont's request is also an attempt to circumvent Swiss law. *See Intel*, 542 U.S. at 264-65 (third factor).

Moreover, Berlamont's request is unduly intrusive because of the confidential nature of the documents. These documents are subject to the *Rembaum* Confidentiality Order, which prohibits Hunton as OIS's counsel from handing over the documents. *See supra* Part II.C.1. Producing the documents would require Hunton to violate English law regarding the confidentiality or the documents. *See supra* Part II.C.2. Producing the documents would subject Hunton to possible liability under Swiss law for violating Swiss attorney-client privilege. *See supra* Part II.C.3. And producing the documents would require Hunton to break the confidences of its client. *See supra* Part II.C.4. For all these reasons, the fourth *Intel* factor counsels against granting Berlamont's request. *See Intel*, 542 U.S. at 264-65. The Court, in its discretion, should deny Berlamont's request.

## III.   In the Alternative, the Court Should Grant OIS and Hunton a Protective Order To Ensure the Continued Confidentiality of the Examination Transcript and Exhibits.

In the alternative, the Court should grant OIS and Hunton a protective order to ensure the continued confidentiality of the examination transcript and accompanying exhibits. Rule

14

26(c)(1) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1).  The documents Berlamont is requesting contain confidential research, development, and commercial information relating to OIS's due diligence process, as well as personal, non-public information, and therefore are protected from disclosure for all the reasons enumerated above.

A standard form protective order will prevent further dissemination of Jaitly's examination transcript.  It is normal, in a § 1782 order, to authorize disclosure only when a protective order prohibiting further dissemination is in place. *See, e.g.*, *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1117 (E.D. Wis. 2004) ("[T]he parties could come to an agreement on the confidentiality of discoverable documents.  For example, P&G could agree not to submit any § 1782(a) discovery to the French or German courts unless it first obtains rulings from such courts that the information will be kept confidential.").

Berlamont has already indicated that he plans to give the documents to the Swiss prosecutor; in fact, that is his only purpose for requesting the documents.  (Berlamont's App., D.E.-1, at 4.)  Thus, disclosure should not be required unless Berlamont is prohibited from disclosing the transcript to any person who does not consent to the protective order and to the Swiss prosecutor unless he likewise consents to the protective order.

## CONCLUSION

For the foregoing reasons, the Court should grant OIS and Hunton's Joint Motion To Vacate *Ex Parte* Order and Quash *Ex Parte* Subpoena, or for a Protective Order.

Dated:  June 30, 2014

Respectfully submitted,

Shawn Patrick Regan, Esq.
**HUNTON & WILLIAMS LLP**
200 Park Avenue
New York, New York  10166
Telephone:  (212) 309-1000
Facsimile: (212) 309-1100
Email:  sregan@hunton.com

- and -

Samuel A. Danon, Esq. (*to be admitted pro hac vice*)
Gustavo J. Membiela, Esq. (*to be admitted pro hac vice*)
1111 Brickell Avenue, Suite 2500
Miami, Florida  33131
Telephone:  (305) 810-2500
Facsimile:  (305) 810-2460
Email:  sdanon@hunton.com
Email:  gmembiela@hunton.com

*Counsel for Optimal Investment Services, S.A. and Hunton & Williams LLP*

## DECLARATION OF SERVICE

Bradford C. Mulder, hereby declares under penalty of perjury, pursuant to 28 U.S.C.

§ 1746, that:

I am the Managing Clerk at the law firm of Hunton & Williams LLP, attorneys for

Optimal Investment Services, S.A. and Hunton & Williams LLP.

That on June 30, 2014, I served a true copy of the attached Memorandum of Law in

Support of Joint Motion To Vacate *Ex Parte* Order and Quash *Ex Parte* Subpoena, or for a

Protective Order, on counsel of record at the address listed below, by hand, by leaving same in a

properly addressed envelope with a proper person at the address below, during the usual business

hours.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 30, 2014.

Bradford C. Mulder

TO:   O. Andrew F. Wilson
      Samuel Shapiro
      **Emery Celli Brinckerhoff & Abady LLP**
      75 Rockefeller Plaza, 20th Floor
      New York, NY  10019
      Telephone: (212) 763-5000

      *Counsel for Franck Berlamont*

17